UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BARNETT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BERNARD GARRIGAN, et al., <br><br> Defendants. | Case No. 20-cv-02585-VC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 144 |

The defendants' motion for summary judgment is granted in part because the plaintiffs have not offered any evidence from which a jury could find that their injuries were caused by their exposure to the mold in their house. However, the plaintiffs' claims can go forward to the extent that they seek economic damages unrelated to their illnesses, injuries, or medical expenses.

1. *Statute of Limitations*. Under California Civil Code Section 2079, a seller's broker owes certain duties to prospective buyers of residential real estate. *See William L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal. App. 4th 1294, 1305 (2012). This statutory duty is subject to a two-year statute of limitations, which runs from "the date of recordation, the date of close of escrow, or the date of occupancy, whichever occurs first." Cal. Civ. Code § 2079.4.

The defendants argue that some of the plaintiffs' claims are time barred because the case was not filed within this two-year window. But the plaintiffs' claims do not flow from Section 2079. Rather, the record suggests that the defendants were brokers *both* for the sellers *and* for the buyers. (The purchase agreement, for example, states that The Land Man Office "is the agent of . . . both the Buyer and Seller." Dkt. No. 60-7 at 2.) The defendants therefore owed the

plaintiffs a fiduciary duty independent of the duty imposed by Section 2079. And the plaintiffs' claims flow from this duty, not the Section 2079 duty. Therefore, Section 2079.4's two-year statute of limitations does not apply to the plaintiffs' claims. *See Lyon*, 204 Cal. App. 4th at 1306.

The relevant limitations periods are governed by the California Code of Civil Procedure, which imposes a two-year statute of limitations on professional negligence claims, a three-year statute of limitations on fraud claims, and a four-year statute of limitations on other claims. *See id.* at 1312–13; Cal. Code Civ. Proc. § 339 (professional negligence); § 338(d) (fraud); § 343 (catch-all). With respect to the fraud and professional negligence claims, the clock does not start running until the plaintiff discovers (or reasonably should have discovered) the relevant injury. *See Lyon*, 204 Cal. App. 4th at 1312–13; *Norgant v. Upjohn Co.*, 21 Cal. 4th 383, 389 (Cal. 1999).

The plaintiffs allege (and the defendants do not contest) that they first discovered the mold in November 2018. The lawsuit was filed in April 2020—less than two years later. The claims were therefore timely filed.

2. *Causation.* To survive summary judgment with respect to their personal injury claims, the plaintiffs must present evidence from which a reasonable jury could find that the mold in their house caused their medical problems. Demonstrating causation has two parts. First, the plaintiffs must show that the mold *could* have caused the physical injuries they suffered. Courts call this "general causation." Second, the plaintiffs must show that the exposure to the mold *did in fact* cause their injuries. This is called "specific causation." *See Golden v. CH2M Hill Hanford Group, Inc.*, 528 F.3d 681, 683 (9th Cir. 2008).

In support of their argument for specific causation, the plaintiffs put forward two reports by Dr. Alla Liberstein, M.D—one for each plaintiff. However, the plaintiffs did not disclose Dr. Liberstein as an expert and did not make her available for a deposition as an expert witness. Summary judgment regarding causation is granted on that ground alone. Out of context, this may seem harsh given that the plaintiffs are representing themselves. However, the plaintiffs have

committed countless rules violations throughout this litigation, and the Court has bent over backwards to ensure that these violations did not ultimately prejudice their ability to present their case. These accommodations for the plaintiffs have prolonged the litigation substantially, forcing the defendants to incur additional legal expenses. But the Court warned the plaintiffs, long ago, that no further rules violations would be tolerated.

Moreover, even if the Court were to consider the reports, the defendants would be entitled to summary judgment on the issue of medical causation. Each report states that the relevant injuries and illnesses were caused by the mold they discovered in their home. But the causation statements are conclusory and do not explain how Dr. Liberstein arrived at the conclusion. For example, Dr. Liberstein simply states that "Based upon Mr. Barnett's provided history and findings on examination, I conclude that Mr. Barnett's injuries were caused by the exposure of block mold at his home." Dkt. No. 149-16 at 12. But the report does not suggest that Dr. Liberstein assessed all potential causes of Barnett's injuries and ruled out other possibilities. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1057–58 (9th Cir. 2003). It does not suggest that there is some sort of genetic marker from which the doctor was able to infer that Barnett was particularly susceptible to illnesses from mold exposure. *See In re Roundup Products Liability Litigation*, 358 F. Supp. 3d 956, 959 (N.D. Cal. 2019). And the plaintiffs do not provide evidence from which the Court could find that Dr. Liberstein is an expert "near the top of their field" with "extensive clinical experience" in the health effects of mold, such that Dr. Liberstein could testify about this conclusion as an expert at trial. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017). Instead, Dr. Liberstein's conclusion appears to be based on pure correlation—the plaintiffs were exposed to mold and got sick; therefore, the mold caused their illnesses.[1] No reasonable jury could conclude that the mold caused the plaintiffs' injuries on this basis alone. Summary judgment is therefore granted to the defendant on the plaintiffs' claims for physical injuries.[2]

---

[1] The report concerning Namazi suffers from the same flaws.
[2] The plaintiffs' evidence in support of general causation is insufficient, too. In brief, while the

To be clear, this ruling does not reflect a view on the Court's part that the mold did not harm the plaintiffs. It simply reflects the fact that the plaintiffs have not made an evidentiary presentation that is adequate to survive summary judgment.

3. *Negligent Supervision*. Claims of negligent supervision require a plaintiff to show that "a person in a supervisorial position over the actor had *prior* knowledge of the actor's propensity to do the bad act." *Alexander v. Community Hospital of Long Beach*, 46 Cal. App. 5th 238, 264 (2020) (quoting *Z.V. v. County of Riverside*, 238 Cal. App. 4th 889, 902 (2015)). The plaintiffs have not presented any evidence in support of their argument that Nored had prior knowledge of Garrigan's propensity to mislead buyers. Summary judgment is therefore granted to Nored on this claim.

\* \* \*

In conclusion, summary judgment is granted to Nored on the negligent supervision claim. The remaining claims survive, but only to the extent that they seek economic damages; the plaintiffs may not seek damages related to any injuries, illnesses, or medical expenses. A case management conference is scheduled for July 13, 2022, at 1:00 p.m. to discuss what is left of the case. At the case management conference, the parties should be prepared to discuss whether any action is needed from the Court on the defendants' motion to compel Christine Pfeffer to produce documents or whether she has already complied with the defendants' subpoena.

**IT IS SO ORDERED.**

Dated: June 24, 2022

VINCE CHHABRIA
United States District Judge

---

mold report that the plaintiffs supplied could serve as evidence that the plaintiffs were exposed to certain types of molds, it does not speak to the health effects that could result from exposure at the doses experienced by the plaintiffs. Indeed, the authors of the report note that they are "not qualified to discuss specific health issues" that may result from exposure to mold. Dkt. No. 149-11 at 11.